IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

THOMAS D. WEILAND,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C11-0006

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.  PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.  FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.  Weiland's Education and Employment Background* . . . . . . . . . . . . . . 5
    *B.  Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . 6
        *1.  Weiland's Testimony* . . . . . . . . . . . . . . . . . . . . . . . 6
        *2.  Vocational Expert Testimony* . . . . . . . . . . . . . . . . . . . 7
    *C.  Weiland's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . 8

*V.  CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *A.  ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 12
    *B.  Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . 14
        *1.  Credibility Determination* . . . . . . . . . . . . . . . . . . . . 14
        *2.  Vocational Expert Testimony and the DOT* . . . . . . . . . . . . 18
        *3.  Age Requirement and the Medical-Vocational Guidelines* . . . 20

*VI.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*VII.  ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Thomas D. Weiland on January 11, 2011, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.  Weiland asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits.  In the alternative, Weiland requests the Court to remand this matter for further proceedings.

## II.  PROCEDURAL BACKGROUND

On October 19, 2007, Weiland applied for both disability insurance benefits and SSI benefits.  In his applications, Weiland alleged an inability to work since July 18, 2006 due to right ankle and right heel problems.  Weiland's applications were denied on February 21, 2008.  On July 14, 2008, his applications were denied on reconsideration.  On August 18, 2008, Weiland requested an administrative hearing before an Administrative Law Judge ("ALJ").  On October 30, 2009, Weiland appeared via video conference with his attorney before ALJ Thomas M. Donahue for an administrative hearing.  Weiland and vocational expert Vanessa May testified at the hearing.  In a decision dated December 23, 2009, the ALJ denied Weiland's claims.  The ALJ determined that Weiland was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy.[1]  Weiland appealed the ALJ's decision.  On November 8, 2010, the

---

[1] In order to meet the requirements for benefits under Title II, a claimant must establish that he or she was disabled prior to the date his or her insured status expired.  *See* 20 C.F.R. § 404.130.  Here, the parties agree that Weiland's insured status expired on December 31, 2006.  In February 2007, prior to the applications filed on October 19, 2007 in this case, Weiland filed different applications for Title II disability insurance benefits and Title XVI SSI benefits.  The February 2007 applications were denied on March 30, 2007.  *See* Administrative Record at 49-50.  Weiland did not further pursue these

(continued...)

Appeals Council denied Weiland's request for review. Consequently, the ALJ's December 23, 2009 decision was adopted as the Commissioner's final decision.

On January 11, 2011, Weiland filed this action for judicial review. The Commissioner filed an Answer on May 20, 2011. On June 22, 2011, Weiland filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On August 19, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 30, 2011, Weiland filed a reply brief. On April 4, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g).

---

[1](...continued)
applications after they were initially denied. In his decision, the ALJ determined that Weiland's February 2007 applications should not be reopened. *Id.* at 10-11. In his brief, the Commissioner asserts that "[t]he last final denial of [Weiland's] prior claim is after the date on which [Weiland's] insured status expired. Thus, there is no period relevant to this claim for which [Weiland] was insured under Title II and [Weiland] is not eligible for Title II benefits." *See* Commissioner's Brief (docket number 11) at 12. Weiland concedes that he is not entitled to Title II disability insurance benefits, but maintains that the Court "still has jurisdiction to consider Mr. Weiland's claim for [SSI] benefits." *See* Weiland's Reply Brief (docket number 12) at 1. The parties agree that the relevant time period for Weiland's SSI claim is from October 19, 2007, the date of application, through December 23, 2009, the date of the ALJ's decision. In other words, if Weiland is found to be disabled in that time period, he is entitled to SSI benefits. Accordingly, the Court will consider Weiland's arguments only as they apply to his SSI claim.

42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Weiland's Education and Employment Background

Weiland was born in 1960. He went to school through the twelfth grade but did not graduate. He later earned his GED at Kirkwood Community College.

The record contains a detailed earnings report for Weiland. The report covers Weiland's employment history from 1989 to 2009. From 1989 to 1998, Weiland earned between $4,589.66 (1989) and $12,643.17 (1996). He had no earnings from 1999 through 2003. He returned to work in 2004, and earned $6,226.00. In 2005 and 2006, he earned $15,380.71 (2005) and $6,121.11 (2006). He has no earnings since 2007.

### B. Administrative Hearing Testimony

### 1. Weiland's Testimony

At the administrative hearing, Weiland explained to the ALJ that he stopped working in 2006 because of injuries sustained in an automobile accident. Weiland broke several toes on both of his feet, and broke his right ankle and crushed his right heel. He stated that his ankle has never completely healed. He has swelling and pain in his ankle, and uses a cane to walk. The ALJ asked Weiland what prevented him from working at a job where he could sit for the majority of the work day. Weiland replied that "I'm constantly using a[n] ice bag and having to put my foot up. And I can't sit down long enough to do anything. I have to keep getting up, sitting down, get up, sit down."[2] Next, the ALJ inquired as to Weiland's typical day:

> Q:  How is it you spend your days? Are you, what time are you getting up?
>
> A:  I'm up most of the night and day, because all I do is toss and turn when I'm asleep. All I do is sit on the couch and watch TV.
>
> Q:  You do any exercise?
>
> A:  No, I can't do anything. . . .
>
> Q:  So what are you doing? You're saying you never leave the house?
>
> A:  I just sit there and watch TV, or go in and lay down, go sit outside. . . .
>
> Q:  Now, your testimony makes it sound like it's a pretty dull way to live. You get depressed?
>
> A:  Yeah. My life has about had it. It's just really boring.

(Administrative Record at 29-30.)

Weiland's attorney also questioned Weiland, and asked him to describe his foot pain:

> Q:  If you were going to rate pain level on a day to day basis, on a zero-ten pain scale, where would your pain be most days?

---

[2] *See* Administrative Record at 29.

> A:  9.5.
> Q:  And is that with the medication?
> A:  Yeah.
> Q:  So it goes that high, even with Lortabs?
> A:  Yeah.  It's constantly swelling up and I can't walk around on it.  If I do, it will still swell up and hurt.  It feels like there's a nail goes through my foot.
> Q:  So it's a real sharp pain at times?
> A:  Yeah.
> Q:  But is it also another kind of pain?  Does it ache?
> A:  It aches, it hurts, it swells. . . .
> Q:  Does it, does the degree of pain that you have distract you from whatever you're doing, watching TV or whatever you're trying to accomplish?
> A:  It distracts me from watching TV or wanting to do anything.  It's just a constant.  All I keep doing is thinking about the pain, how I can relieve it.
> Q:  Have you found anything that helps at all?  Any home remedies?
> A:  No.  Just the ice.  That only helps, I use it half the day.

(Administrative Record at 34-35.) Weiland's attorney asked Weiland whether Weiland had the functional abilities to perform an eight-hour, five-day per week job.  Weiland responded that "[t]here's really no job I can do.  I can't do any of the jobs I used to do, because I can't walk for a period of time, and I can't sit down.  I can't climb ladders like I used to.  I can't walk on grass, because if I hit a rock, I'm down, I'm done."[3]

### 2.    *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is able to:

> lift ten pounds occasionally, ten pounds frequently.  Can sit two hours at a time, for six in an eight hour day.  Standing: 15 minutes for two of an eight hour day.  Walking: one block, with cane.  No working at heights, . . . also no working on ladders, ropes, and scaffolds.  No crouching or crawling, only

---

[3] *See* Administrative Record at 38.

> occasional balancing, stooping, kneeling.  [The individual]
> would need his leg elevated at chair level.

(Administrative Record at 45.)  The vocational expert testified that under such limitations, Weiland could not perform his past relevant work.  The vocational expert further testified that Weiland could perform the following work:  (1) telephone quotation clerk (700 positions in Iowa and 76,000 positions in the nation), (2) sorter (1,000 positions in Iowa and 10,000 positions in the nation), and (3) addresser (200 positions in Iowa and 18,000 positions in the nation).  The ALJ asked a second hypothetical which was identical to the first hypothetical except that the individual would need to sit with one leg elevated to chair level and have frequent unscheduled breaks.  The vocational expert testified that under such circumstances, the individual would be precluded from competitive employment.

### C.  Weiland's Medical History

On July 18, 2006, Weiland was involved in a motor vehicle accident, and sustained fractures to his fibula and heel on his right leg and foot.  Upon discharge from the hospital, Weiland was directed to use ice intermittently on his ankle and foot for four days, elevate his leg above the chest for four days, use crutches, and no weight-bearing on his right leg until released.  Three days later, Weiland returned to the emergency room with left toe pain.  X-rays showed fractures in three of Weiland's toes on his left foot.

On July 27, 2006, Weiland met with Dr. Lisa M. Coester, M.D., for consultation on his foot and ankle.  Upon examination, Dr. Coester found that Weiland could be weight-bearing on his left leg as tolerated, but could not walk on his right leg for three months.  Dr. Coester anticipated that Weiland would be off of work for four to six months.  Dr. Coester also opined that surgical intervention would be unhelpful and recommended that Weiland not undergo surgery on his right foot or ankle.

On August 2, 2006, Weiland sought a second opinion from Dr. J.L. Marsh, M.D., regarding his right heel and ankle.  When he met with Dr. Marsh, Weiland was in walking boots with no weight-bearing on his right.  Upon examination, Dr. Marsh found that Weiland could bear weight on his left foot without much difficulty, and could get around

with a wheelchair or crutches. As for his right foot and leg, Dr. Marsh noted that Weiland was limited by pain. Dr. Marsh recommended no weight-bearing on his right extremity and exercises to increase his flexibility.

In October 2006, Dr. Coester released Weiland to work at sit-down jobs only. He was restricted from climbing, squatting, standing, and stooping. Dr. Coester also limited Weiland to walking only for 15 minutes. In December 2006, Weiland reported to Dr. Coester that "he is still having extreme difficulty putting any weight on his right foot and ankle for more than 15 minutes at a time."[4] Dr. Coester opined that "it appears that he is having a little bit more painful range of motion and difficulty bearing weight than I would have anticipate[d]."[5] Dr. Coester recommended a epidural steroid injection as treatment, and took Weiland back off of work. In January 2007, Dr. Coester prescribed a cane and an orthotic insert as treatment for Weiland. In February 2007, Dr. Coester continued to keep Weiland off of work.

On March 29, 2007, Dr. James D. Wilson, M.D., reviewed Weiland's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Weiland. Dr. Wilson determined that Weiland could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Wilson also determined that Weiland could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Wilson found no manipulative, visual, communicative, or environmental limitations. Dr. Wilson concluded that:

> [Weiland] reports he is unable to bear weight for very long until pain and swelling return. He spends most of his time

---

[4] *See* Administrative Record at 347.

[5] *Id.*

> sitting with his leg elevated or laying down. He does no
> activities around the house. He reports pain all the time, no
> matter what position he is in. [Weiland] does have [medically
> determined impairments] that would currently restrict his
> functional abilities. He does have treatment but has failed to
> follow some of the therapy that is prescribed from [his treating
> source]. This does erode his credibility to some extent. With
> time and continued treatment he is expected to regain function.
> Based on the evidence in file he would be capable of work
> related activities outlined above as of 7/18/07.

(Administrative Record at 363.)

On November 15, 2007, Weiland met with Dr. Arnold E. Delbridge, M.D., for a consultative examination. Upon examination, Dr. Delbridge found loss of motion in Weiland's ankle, loss of motion in his hindfoot, and some deformity of his calcaneus. Dr. Delbridge opined that Weiland had 17% impairment of his right lower extremity. Dr. Delbridge further opined that Weiland:

> has not been able to work following the accident. He worked
> installing irrigation systems and had to walk on uneven ground
> to do that. He has not been able to regain his ability to walk
> on uneven ground since his injury. It is probable that his
> inability to walk on uneven ground will extend into the future
> indefinitely.

(Administrative Record at 374.) Dr. Delbridge concluded that:

> Mr. Weiland will have his current difficulties and will require
> Lortab and ibuprofen in the foreseeable future and it is highly
> questionable whether he will be able to find gainful
> employment given his physical impairments and given his
> inability to walk distances and his inability to walk anywhere
> on uneven surfaces.

(Administrative Record at 375.)

On January 16, 2008, Weiland was referred by DDS to Dr. Audrey R. Shaeffer, D.O., for a consultative examination. Weiland advised Dr. Shaeffer that his pain was "usually" 8 out 10 on a scale of 1 to 10, and ranged from 6 out of 10 to 10 out of 10. He reported that he is "never" pain-free. He stated that cold increases his pain, but sitting

sometimes makes it better.  Dr Shaeffer noted that "[h]e stated he would kick me through the window if I touched his foot."[6]  With regard to activities of daily living, Weiland stated that he watches television and sits most of the day.  Dr. Shaeffer noted that Weiland "is able to do his own self-care and personal hygiene[.] . . . Physical activity is difficult for him and standing, sitting, walking, climbing stairs, pushing and pulling."[7]  Dr. Shaeffer further noted that Weiland uses a cane because he has been told by his treating doctors not put too much pressure on his right foot.  Upon examination, Dr. Shaeffer opined that Weiland could occasionally stand, walk, stoop, and bend.  Dr. Shaeffer determined that Weiland could never crawl or kneel.  Lastly, Dr. Shaeffer found that Weiland had no restrictions with sitting.

On February 20, 2008, Dr. Gary Cromer, M.D., reviewed Weiland's medical records and provided DDS with a physical RFC assessment for Weiland.  Dr. Cromer determined that Weiland could:  (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations.  Dr. Cromer also determined that Weiland could occasionally climb ramps and stairs, balance, stoop, and kneel, but never crouch or crawl.  Dr. Wilson also opined that Weiland should avoid concentrated exposure to hazards, such as machinery and heights.  Dr. Cromer found no manipulative, communicative, or visual limitations.

In October 2008, Weiland underwent a CT scan of his right foot and ankle.  Dr. Marsh reviewed the CT scan and noted that it demonstrated "some degenerative changes in the subtalar joint which were more significant [than] x-rays would indicate."[8]

---

[6] *See* Administrative Record at 384.

[7] *Id.* at 385.

[8] *See* Administrative Record at 414.

Dr. Marsh discussed surgical options with Weiland, but "given the risks of surgery and unpredictable nature [of success, Weiland] has elected to continue with his current [activities of daily living] and try to get through the pain."[9]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Weiland is not disabled.  In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations.  *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003).  The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work."  *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)).  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity

---

[9] *Id.* at 415.

("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Weiland had not engaged in substantial gainful activity since July 18, 2006. At the second step, the ALJ concluded from the medical evidence that Weiland had the following severe impairment: status post right comminuted intraarticular calcaneal fracture. At the third step, the ALJ found that Weiland did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Weiland's RFC as follows:

> [Weiland] has the residual functional capacity to perform sedentary work . . . except that he can lift 10 pounds frequently and 10 pounds occasionally. He can sit 2 hours at a time for a total of 6 hours in an 8 hour workday. He can stand 15 minutes for a total of 2 hours in an 8 hour workday. He can walk one block with a cane. He cannot work at heights. He cannot climb ladders, ropes, or scaffolds. He cannot crouch or crawl and can only occasionally balance, stoop, and kneel. He needs to elevate his leg at chair level.

(Administrative Record at 13.) Also at the fourth step, the ALJ determined that Weiland could not perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Weiland could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Weiland was not disabled.

### B.  Objections Raised By Claimant

Weiland argues that the ALJ erred in three respects.  First, Weiland argues that the ALJ failed to properly evaluate his subjective allegations of disability.  Second, Weiland argues that the ALJ's ultimate disability determination is flawed because the ALJ improperly relied on vocational expert testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT").  Lastly, Weiland argues that the ALJ improperly applied the age categories of the medical-vocational guidelines.

### 1.    Credibility Determination

Weiland argues that the ALJ failed to properly evaluate his subjective allegations of disability.  Weiland maintains that the ALJ's credibility determination is not supported by substantial evidence, particularly with his need to regularly elevate his right leg above heart level.  The Commissioner also argues that Weiland's claim that he needs to regularly elevate his right leg to heart level is not credible because it is not supported by the medical evidence of record and is inconsistent with the ALJ's properly formulated RFC assessment for Weiland.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions."  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider.  *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted).  The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them."  *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective

claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[an ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

Additionally, an ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see*

*also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). Specifically, "the ALJ's determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); *see also Krogmeier v. Barnhart*, 249 F.3d 1019, 1023 (8th Cir. 2002) (in determining a claimant's RFC the ALJ is required to obtain medical evidence addressing the claimant's ability to function in the workplace).

In his decision the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Weiland's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Weiland's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. . . .
>
> In summary, healthcare professionals generally report functional limitations that would limit [Weiland] to performing work at the generally sedentary level of physical exertion. [Weiland] has consistently reported pain in the right ankle and heel and using a cane to ambulate. He also has testified he elevates his right leg to relieve symptoms. He has not followed through on getting recommended orthotics and has declined offered surgery. The undersigned reasonably concludes [Weiland] adequately manages his reported symptoms with his present treatment to the extent he can perform work at the generally sedentary level of physical exertion.

(Administrative Record at 14-15.)

In his RFC assessment for Weiland, the ALJ included Weiland's need to elevate his right leg to relieve his symptoms. While the ALJ did not specifically address Weiland's claim that his right leg must be raised to heart level, the Court finds no error in the ALJ's consideration of this issue. There is no medical evidence in the record which suggests Weiland is required to elevate his leg at all, let alone to heart level.[10] Therefore, the Court finds that the ALJ's RFC assessment, including the requirement that Weiland "needs to elevate his leg at chair level" was proper because the ALJ fully considered Weiland's medical records, observations of treating physicians, and Weiland's own description of his limitations, including Weiland's testimony that he needed to elevate his leg to relieve his symptoms.[11] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

Turning to the ALJ's credibility determination, it is clear from the ALJ's decision that he thoroughly considered and discussed Weiland's treatment history, medical history, and functional restrictions in making his credibility determination. Therefore, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Weiland's subjective allegations of

---

[10] The Court is aware that upon discharge from the emergency room following his automobile accident, Weiland was instructed to elevate his right leg to heart level for four days, but that is the only time that leg elevation is discussed in the record as a form of treatment. There is no other medical evidence in the record, from treating sources or examining sources which requires that Weiland raise his right leg to heart level or any other level as a form of treatment.

[11] *See* Administrative Record at 13-15 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

disability were not fully credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons discredited Weiland's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.    *Vocational Expert Testimony and the DOT*

Weiland argues that the ALJ's ultimate disability determination is flawed because the ALJ improperly relied on vocational expert testimony that was inconsistent with the DOT.    At the administrative hearing, the ALJ provided the vocational expert with a hypothetical question which set forth the following limitations:

> lift ten pounds occasionally, ten pounds frequently. Can sit
> two hours at a time, for six in an eight hour day. Standing:
> 15 minutes for two of an eight hour day. Walking: one block,
> with cane. No working at heights, . . . also no working on
> ladders, ropes, and scaffolds. No crouching or crawling, only
> occasional balancing, stooping, kneeling. [The individual]
> would need his leg elevated at chair level.

(Administrative Record at 45.)  Based on this hypothetical, the vocational expert testified that Weiland could perform the following jobs:  (1) telephone quotation clerk, (2) sorter, and (3) addresser.

Weiland argues that the vocational expert's testimony is flawed because Weiland's RFC, which was provided by the ALJ in his hypothetical to the vocational expert, is inconsistent with the DOT's job descriptions for telephone quotation clerk, sorter, and

addresser.  In other words, Weiland asserts that the ALJ's RFC places restrictions on him which are inconsistent with the DOT job descriptions, and preclude him from being able to perform the jobs of telephone quotation clerk, sorter, and addresser.  Specifically, Weiland points out that each of these jobs requires the worker to have the ability to "lift and carry" ten pounds.  Weiland maintains that the "lift and carry" requirement is inconsistent with the ALJ's hypothetical question to the vocational expert because the ALJ only asked the vocational expert to assume that Weiland could lift 10 pounds, not both lift and carry 10 pounds.

Social Security Regulation ("SSR") 00-4p explains that in making disability determinations, the Social Security Administration relies "primarily on the DOT for information about the requirements of work in the national economy."  SSR 00-4p, 2000 WL 1898704 at *2.  SSR 00-4p further provides that:

> Occupational evidence provided by a VE [(vocational expert)] . . . generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

*Id*.  While SSR 00-4p clearly provides that occupation evidence provided by a vocational expert should be consistent with occupational information contained in the DOT, the Court cautions Weiland not to read too much into this Social Security regulation.  In *Wheeler v. Apfel*, 224 F.3d 891 (8th Cir. 2000), the Eighth Circuit explained that:

> 'reliance on the DOT as a definitive authority on job
> requirements is misplaced, however, for DOT definitions are
> simply generic job descriptions that offer the approximate
> maximum requirements for each position, rather than their
> range.' The DOT itself cautions that its descriptions may not
> coincide in every respect with the content of jobs as performed
> in particular establishments or at certain localities. In other
> words, not all of the jobs in every category have requirements
> identical to or as rigorous as those listed in the DOT.

*Id.* at 897 (quoting *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997)).

Here, the ALJ sought testimony from a vocational expert at the administrative hearing. The vocational expert's opinion that Weiland could perform the jobs of telephone quotation clerk, soter, and addresser was based on the ALJ's hypothetical question which incorporated the ALJ's RFC assessment for Weiland, including the ALJ's restrictions on lifting. Because the ALJ provided the vocational expert with a proper hypothetical question, and the ALJ's RFC assessment for Weiland is consistent with the DOT in all respects, except possibly for the carrying requirement, the Court finds that the ALJ did not err in relying on the vocational expert's testimony. *See Gragg v. Astrue*, 615 F.3d 932. 941 (8th Cir. 2010) ("Because the hypothetical was adequate, the vocational expert's testimony was reliable to establish that there are jobs that Gragg can perform that exist in significant numbers within the regional and national economies."); *see also Wagner v. Astrue*, 499 F.3d 842, 854 (8th Cir. 2007) (recognizing that an ALJ may rely on the testimony of a vocational expert when making his or her findings at step four and five of the five-step sequential evaluation). In sum, the Court concludes that Weiland's argument on the DOT consistency issue neither has merit, nor supports a remand of this matter for further consideration.

### 3.    *Age Requirement and the Medical-Vocational Guidelines*

During the period for which Weiland's SSI benefits claim is applicable, Weiland was between age 47 and 49. He was approximately two-and-one-half weeks shy of his fiftieth birthday when the applicable period ended. Weiland maintains that if he would

have been age 50 at the time his applicable period expired, he would have been found to be disabled under the medical-vocational guidelines. Weiland argues that the ALJ should not have applied the medical-vocational guideline rules mechanically, and should have found him disabled since he was close to age 50 on the date his SSI benefits period expired.

20 C.F.R. § 416.920(g)(1) provides that if a claimant is found to be unable to perform his or her past relevant work due to an impairment, then the Social Security Administration will consider the claimant's RFC combined with vocational factors – including age, education, and work experience – to determine if the claimant can make an adjustment to other work. *Id.* "Age," as a vocational factor means a claimant's chronological age. *See* 20 C.F.R. § 416.963. In considering age as a vocational factor, an ALJ considers the age categories found in 20 C.F.R. § 416.963(c)-(e).

Here, the ALJ classified Weiland as a "younger individual."[12] The "younger person" category spans ages 45 to 49. 20 C.F.R. § 416.963(c). The individual in the "closely approaching advanced age" category spans ages 50 to 54. 20 C.F.R. § 416.963(d). 20 C.F.R. § 416.963(b) provides that in "borderline" age categories situations:

> [The Social Security Administration] will not apply the age categories mechanically[.] . . . If your are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the facts of your case.

*Id.* While not binding on this Court or having the force of law, the Hearings, Appeals and Litigation Law Manual of the Social Security Administration ("HALLEX") provides guidance to ALJs on this issue. According to HALLEX, an ALJ uses a "sliding scale"

---

[12] *See* Administrative Record at 15.

approach for determining which age category to use. *See* HALLEX II-5-3-2, 2003 WL 25498826 (S.S.A.). HALLEX further explains that:

> Under this approach, the claimant must show progressively more additional vocational adversity(ies) -- to support use of the higher age -- as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.
>
> One finds additional vocational adversity(ies) if some adjudicative factor(s) is relatively more adverse when considered in terms of that factor's stated criteria, or when there is an additional element(s) which has adverse vocational implications.   Examples of these additional vocational adversities are the presence of an additional impairment(s) which infringes upon--without substantially narrowing-- a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting. (An isolated industry would be such as fishing or forestry.) Other adverse circumstances in individual cases may justify using the higher age category.
>
> Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age -- even when the time period is only a few days.  The adjudicator need not explain his or her use of the claimant's chronological age.

*Id*.  In his opinion, other than concluding that Weiland was a "younger individual," the ALJ did not discuss Weiland's age categorization or the possibility that he presented a "borderline" situation.

The Eighth Circuit Court of Appeals has not addressed the issue of whether an ALJ must expain his or her use of a claimant's chronological age in a situation involving "borderline" age categorization, and there is a circuit split on this issue.  The Third and Tenth Circuits suggest that an ALJ is required to address his or her reasons for selecting a particular age category in a "borderline" situation. *See Kane v. Heckler*, 776 F.2d 1130,

1132-34 (3d Cir. 1985) (providing that an ALJ must "consider" the age categorization options in a "borderline" case); *Daniels v. Apfel*, 154 F.3d 1129, 1136 (10th Cir. 1998) ("The Commissioner must determine based on whatever evidence is available which of the categories on either side of the borderline best describes the claimant, and the Commissioner may apply that category in using the grids. Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence."). More recently, the Sixth and Ninth Circuits have indicated that an ALJ is not *per se* required to address borderline age categorization in every borderline case. *See Bowie v. Commissioner of Social Security*, 539 F.3d 395, 399 (6th Cir. 2008) ("Although ALJs are obligated by [20 C.F.R. § 416.963(b)] not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in [the language of the text] obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. Rather, the regulation merely promises claimants that the Administration will 'consider' veering from the chronological-age default in borderline situations."); *Lockwood v. Commissioner of Social Security Administration*, 616 F.3d 1068, 1071 (9th Cir. 2010) ("It is clear from the text of [20 C.F.R. § 416.963(b)] that an ALJ is not *required* to use an older age category, even if the claimant is withing a few days or a few months of reaching an older age category.") (Emphasis added).

Based on the facts and circumstances underlying the instant action, the Court believes that the instant action is more in line with *Bowie* and *Lockwood*, than it is with *Kane* and *Daniels*. Specifically, unlike *Kane* and *Daniels*, the ALJ did not rely solely on the medical-vocational guidelines in making his disability determination, but he also relied on the testimony of the vocational expert in finding that Weiland was not disabled. *See Lockwood*, 616 F.3d at 1072 (Concluding that the ALJ "did not 'apply the age categories mechanically' because the ALJ 'evaluated the overall impact of all the factors of

Lockwood's case' when the ALJ relied on the testimony of a vocational expert before she found Lockwood was not disabled."). The Court finds it significant that the ALJ did not rely simply on the medical-vocational guidelines to find Weiland not disabled, but relied primarily on the vocational expert's testimony with regard to whether at step-five of the sequential test that based on Weiland's age, education, previous work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Weiland could perform. Furthermore, unlike *Kane* and *Daniels* where the HALLEX guidelines were not available or addressed by those circuits, Weiland has not identified any additional vocational adversities to support his contention that the ALJ should have placed him in the category of "closely approaching advanced age." *See Id.* ("Here Lockwood does not identify any additional vocational adversities that would have given the ALJ reason to treat Lockwood as a person of advanced age."); *Bowie*, 539 F.3d at 401 ("[T]here is simply no evidence in the record that Bowie suffered from any 'additional vocational adversities' that might justify placing her in the higher age category. . . . Given these circumstances and the lack of any other questionable findings by the ALJ, the ultimate benefits determination is supported by substantial evidence."). Therefore, like in *Bowie* and *Lockwood*, the ALJ's lack of an explicit discussion of 20 C.F.R. § 416.963(b) and the "borderline" age category issue was not in error.

In summary, the Court finds that the ALJ did not "mechanically" apply the medical-vocational guidelines in finding that Weiland was not disabled because the ALJ: (1) relied primarily on vocational expert testimony for determining that Weiland was disabled; (2) there is no evidence in the record that Weiland had "additional vocational adversities" that would have given the ALJ reason to place Weiland in the "closely approaching advanced age" category; and (3) at all times during the relevant time period for determining whether Weiland was disabled and entitled to SSI benefits, October 19, 2007 to December 23, 2009, Weiland was between the ages of 47 and 49. *See Lockwood*, 616

F.3d at 1071-74; *Bowie*, 539 F.3d at 396-403.   Accordingly, the Court concludes that Weiland's argument with regard to the medical-vocational guidelines is without merit.

## VI.  CONCLUSION

The Court finds that the ALJ properly determined Weiland's RFC and made a proper credibility determination for Weiland.   The Court also finds no error in the hypothetical questions presented to the vocational expert by the ALJ, and no inconsistency between the Vocational Expert's testimony and the DOT.   Lastly, the Court finds no merit in Weiland's argument regarding the ALJ's application of the medical-vocational guidelines in his decision finding Weiland not disabled.   Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.      The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.      Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.      The Clerk of Court is directed to enter judgment accordingly.

DATED this _23rd_ day of January, 2012.

_____

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA